UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**CARRIE L. JACKSON, a/k/a CARRIE L. DAVIS,**

                  **Plaintiff,**

          v.                            5:15-CV-1076 (FJS)

**COMMISSIONER OF SOCIAL SECURITY,**

                  **Defendant.**
_____

**APPEARANCES**                           **OF COUNSEL**

**LEGAL SERVICES OF CENTRAL**         **CHRISTOPHER J. CADIN, ESQ.**
**NEW YORK**
221 South Warren Street, Suite 300
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **MICHELLE L. CHRIST, ESQ.**
**OFFICE OF REGIONAL**
**GENERAL COUNSEL – REGION II**
26 Federal Plaza – Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiff Carrie L. Jackson, a/k/a Carrie L. Davis, brought this action pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("Act"), seeking judicial review of a final decision of the

Commissioner of Social Security (the "Commissioner"), denying her application for benefits. *See generally* Dkt. Nos. 1, 15. Pending before the Court are the parties' cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 15, 21.

## II. PROCEDURAL HISTORY AND BACKGROUND

Plaintiff protectively applied for benefits on March 27, 2012, alleging disability as of March 1, 2012. *See* Administrative Record ("AR") at 123. The Social Security Administration denied Plaintiff's application on June 26, 2012. *See id.* at 62. Plaintiff filed a timely request for a hearing on July 13, 2012. *See id.* at 98-99. A video hearing was held on June 18, 2013, before Administrative Law Judge Marie Greener ("ALJ"). *See id.* at 18. On November 27, 2013, the ALJ held a supplemental video hearing. *See id.* At this hearing, David A. Festa, an impartial vocational expert, testified. *See id.* Attorney Cindy Domingue-Hendrickson represented Plaintiff at both hearings. *See id.*

On February 19, 2014, the ALJ issued a written decision in which she made the following findings "[a]fter careful consideration of the entire record . . . ."

1) Plaintiff had not "engaged in substantial gainful activity since March 27, 2012, the application date."
2) Plaintiff "has the following severe impairments: AC deformity; depression; and anxiety."
3) Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."
4) Plaintiff "has the residual functional capacity to perform unskilled light work as defined in 20 CFR 416.967(b) with no overhead lifting, and performing low stress work meaning routine daily tasks which do not significantly change in pace or location on a daily basis; and tasks which do not require working in conjunction or cooperation with others."

5) "Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."
6) Plaintiff "has not been under a disability, as defined in the Social Security Act, since March 27, 2012, the date the application was filed."

*See* AR at 20-26 (citations omitted).

The ALJ's decision became the Commissioner's final decision on June 29, 2015, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review. *See* AR at 6-8. Plaintiff then commenced this action on September 2, 2015, filing a supporting brief on June 16, 2016. *See* Dkt Nos. 1, 15. Defendant filed a response brief on August 29, 2016. *See* Dkt. No. 21.

In support of her motion, Plaintiff argues that the ALJ erred by not finding her Muenke/Crouzon syndrome, carpal tunnel syndrome, and migraine headaches to be severe at step two of the disability analysis. Moreover, Plaintiff argues that there is not substantial evidence to support the ALJ's findings with respect to her residual functional capacity ("RFC"). In particular, Plaintiff argues that the ALJ erred by not finding in her RFC analysis that she is limited to occasional reaching and lifting in all directions, not just overhead. Finally, Plaintiff argues that the ALJ improperly weighed medical source opinions. *See generally* Dkt. No. 15, Pl.'s Br.

### III. DISCUSSION

**A. Standard of review**

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*

*v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). Accordingly, a reviewing court "'may not substitute [its] own judgment for that of the [Commissioner], even if [it] might justifiably have reached a different result upon a de novo review.'" *Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 52 (2d Cir. 2016) (summary order) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)). In other words, "[t]he substantial evidence standard means once an ALJ finds facts, [a reviewing court may] reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quotation and other citation omitted).

To be eligible for benefits, a claimant must show that she suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability to engage in substantial gainful activity ("SGA") by reason of a medically determinable physical or mental impairment that can be expected to cause death or last for at least twelve consecutive months. *See* 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

> 1) The ALJ first determines whether the claimant is engaged in SGA. *See* 20 C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b).
>
> 2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id*.
>
> 3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).
>
> 4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do her past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(f).
>
> 5) If the claimant cannot perform her past relevant work, the ALJ determines if she can perform other work, in light of her RFC, age, education, and experience. *See*

20 C.F.R. § 416.920(f), (g). If so, then she is not disabled. *See* 20 C.F.R. § 416.920(g). A claimant is only entitled to receive benefits if she cannot perform any alternative gainful activity. *See id*.

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step if the analysis proceeds that far. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (quotation omitted).

**B. ALJ's finding, at Step 2 of her analysis, that Plaintiff's Muenke/Crouzon syndrome, carpal tunnel syndrome, and migraine headaches were not severe impairments**

At step two of the disability analysis, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). In order to be severe, an impairment or combination of impairments must "significantly limit[] your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). An impairment or combination of impairments fails to meet this standard when the medical evidence "establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . ." Social Security Ruling ("SSR") 85-28, 1985 WL 56856, *3 (1985). "[E]vidence about the functionally limiting effects of an individual's impairment(s) must be evaluated" and "symptom-related limitations and restrictions must be considered at this step of the sequential evaluation process . . . ." SSR 96-3p, 1996 WL 374181, *2 (July 2, 1996). Furthermore, it is not error "when functional effects of impairments erroneously determined to be non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments[.]" *Snyder v. Colvin*, No. 5:13-cv-585, 2014 WL 3107962, *5 (N.D.N.Y. July 8, 2014).

In this case, Plaintiff argues that the ALJ erroneously declined to find that her Muenke/Crouzon syndrome, carpal tunnel syndrome ("CTS"), and migraine headaches

amounted to severe impairments. *See* Dkt. No. 15, Pl.'s Br., at 19-22. With respect to her Muenke/Crouzon syndrome, she argues that the ALJ's determination that her facial deformity was corrected by surgery and now involves "barely minimal disfigurement" is contrary to the record. *See id*. at 20; *see also* AR at 23. Furthermore, Plaintiff asserts that her Muenke/Crouzon syndrome causes her depression and anxiety. *See* Dkt. No. 15 at 21.

Although Plaintiff's Muenke/Crouzon syndrome may heighten her depression and anxiety, it was not error for the ALJ to find that the Muenke/Crouzon syndrome did not independently constitute a severe impairment. First of all, the ALJ considered Plaintiff's Muenke/Crouzon syndrome in relation to and as a cause of her depression and anxiety. However, as the ALJ pointed out, "there is no indication that this condition causes her any work-related limitations" on its own. *See* AR at 21. Plaintiff has failed to point to any evidence suggesting how her Muenke/Crouzon syndrome is independently severe, or how it limits her ability to work. Accordingly, the Court finds that there was substantial evidence in the record to support the ALJ's finding that Plaintiff's Muenke/Crouzon syndrome had "no more than a minimal effect" on her ability to work.[1] SSR 85-28, 1985 WL 56856, at *3.

Plaintiff also states that the ALJ erred in failing to list her CTS as a severe impairment. *See* Dkt. No. 15 at 19. Plaintiff argues that the ALJ inappropriately discounted her CTS because it was merely a clinical diagnosis without a referral. *See id*. at 19 n.12. Contrary to Plaintiff's position, the ALJ considered her complaints regarding her CTS but noted that the record indicated that, after she initially complained of tingling in her hands in June 2013, she was

---

[1] In any event, any error is harmless because the ALJ considered Plaintiff's Muenke/Crouzon syndrome and the psychological impact it had on her ability to function throughout the remainder of her analysis and included commensurate limitations in Plaintiff's RFC. *See* AR at 23; *Snyder*, 2014 WL 3107962, at *5.

prescribed medical braces and her symptoms were controlled with treatment.[2] *See* AR at 20. Dr. Gooldy's records show that the braces "help 'very much,'" *see id.* at 663; and, by September 26, 2013, Plaintiff stated that she no longer felt numbness or tingling and only had pain "'once in a while,'" *see id.* at 672.

Additional records indicated that Plaintiff started to experience CTS symptoms again in January 2014 and was referred for an EMG with Dr. Kim, *see id*. at 727, and that the results of the EMG were negative, *see id.* at 730 (treatment date on February 4, 2014). This evidence, which the Appeals Council considered, did "not alter the weight of the evidence so dramatically as to require the Appeals Council to take the case." *Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir. 2014) (summary order). Accordingly, the Court finds that there was substantial evidence in the record to support the ALJ's finding that Plaintiff's CTS had "no more than a minimal effect" on her ability to work. SSR 85-28, 1985 WL 56856, at *3.

Finally, with respect to migraine headaches, Plaintiff relies solely on her hearing testimony to support her contention that her migraines are a severe impairment.[3] In her analysis,

---

[2] The ALJ incorrectly stated that Plaintiff had failed to pick-up the prescribed braces. *See* AR at 20, 25. The record indicates that, on July 1, 2013, Plaintiff had yet to pick-up the braces, *see id.* at 657; however, subsequent records clearly show that Plaintiff experienced symptom relief because she obtained and started to use the braces, *see id*. at 663, 667, 672.

[3] When assessing Plaintiff's testimony, the ALJ weighed Plaintiff's credibility, which was her responsibility to do. Furthermore, the ALJ properly applied the Social Security Administration's two-step standard for assessing a claimant's credibility. *See* SSR 16-3p, 2016 WL 1119029, (Mar. 16, 2016) (although SSR 16-3p superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996); both SSR 16-3p and SSR 96-7p require that the ALJ perform a two-step analysis to assess a claimant's credibility in reporting her symptoms); *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (summary order).

> First, the ALJ must determine whether the claimant suffers from a "medically determinable impairment[ ] that could reasonably be expected to produce" the pain alleged. 20 C.F.R. § 404.1529(c)(1); . . . Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's pain contentions are not

the ALJ acknowledged that Plaintiff had been diagnosed with migraine headaches but noted that an MRI of Plaintiff's brain was normal. *See* AR at 21. Furthermore, the ALJ stated that Plaintiff had had "very little medical treatment over the years" for her chronic headaches, and her doctors had indicated that medication helped. *See id*. at 20-21. Moreover, no treating or examining physician identified any functional limitations arising out of Plaintiff's migraine headaches. For these reasons, the Court finds that the ALJ was justified in "relying on what [the record did] not say" in this instance. *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (citation omitted). Accordingly, the Court finds that there was substantial evidence in the record to support the ALJ's finding that Plaintiff's migraine headaches had "no more than a minimal effect" on her ability to work. SSR 85-28, 1985 WL 56856, at *3.

In summary, for the above-stated reasons, the Court finds that there was substantial evidence in the record to support the ALJ's finding, at Step 2 of her analysis, that Plaintiff's Muenke/Crouzon syndrome, CTS, and migraine headaches did not amount to severe impairments, or a combination thereof, as defined in the regulations. *See Richardson*, 402 U.S. at 401.

**C. ALJ's RFC analysis**

Between steps three and four of the disability analysis, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is defined as "the most you can still do

---

substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry. . . .

*Meadors*, 370 F. App'x at 183 (internal citations and footnote omitted). In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. She then found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible. *See* AR at 24.

[in a work setting] despite your limitations." *See* 20 C.F.R. § 416.945(a)(1); 20 C.F.R. § 416.920(e). The RFC analysis considers "all of your medically determinable impairments of which we are aware" even if they are not severe. 20 C.F.R. § 416.945(a)(2). The ALJ is to consider "all of the relevant medical and other evidence" in assessing RFC. 20 C.F.R. § 416.945(a)(3). As stated above, the ALJ found that Plaintiff could perform unskilled light work with "no overhead lifting[.]" *See* AR at 23.

In this case, Plaintiff argues that substantial evidence does not support the ALJ's determination that she can perform light work and that the ALJ should have found that she is unable to reach/lift in any direction. *See* Dkt. No. 15 at 17-18. According to Plaintiff, the uncontroverted testimony of the vocational expert establishes that Plaintiff could not perform light work had the ALJ added this additional limitation. *See id*. at 17 (asserting that the vocational expert testified that limiting Plaintiff to occasional reaching in other directions would eliminate work as a Shipping and Receiving Weigher and Cleaner).

Plaintiff argues that the ALJ ignored record evidence regarding her shoulder deformity. *See id*. at 18. In that regard, the record indicates that Plaintiff has "marked restrictions for overhead lifting" due to a recurring dislocated shoulder. *See* AR at 411. Furthermore Plaintiff relies on record citations that acknowledge her shoulder instability. *See* AR at 327, 332, 337, 347, 350, 561, 566, 660, 667, 675. Each of these records reflects treatment notes from Dr. Gooldy. Dr. Gooldy also completed a "Musculoskeletal Questionnaire" on June 20, 2013, indicating that Plaintiff could occasionally reach, occasionally lift/carry over 20lbs, frequently bend or twist at the waist, occasionally use her hands, and could stand/walk for less than two hours per work-day. *See* AR at 594.

The ALJ discredited Dr. Gooldy's opinion, as demonstrated in the questionnaire, because it was not adequately supported by Dr. Gooldy's clinical reporting, and it was inconsistent with the remainder of the medical evidence. *See id.* at 25 (citing Social Security Ruling 96-2p). Specifically, the ALJ found that Plaintiff's "testimony and the activities of daily living reported to examining sources and treating sources support a higher level of functioning." *See id.*

Notably lacking from the record is any evidence that specifically limits Plaintiff's ability to reach from side to side. "The [ALJ] is entitled to rely not only on what the record says, but also on what it does not say." *Dumas*, 712 F.2d at 1553 (citations omitted). Thus, the ALJ did not err in concluding that Plaintiff is able to reach in other directions, nor did the ALJ err in limiting her hypothetical questioning to the vocational expert to only include a limitation of overhead lifting. *See Dumas*, 712 F.2d at 1554 n.4 (stating that "[t]he ALJ is responsible for determining, based on all the evidence, the claimant's physical capabilities").

In sum, to the extent that Plaintiff points to evidence in the Administrative Record that reasonably might support a different conclusion in her favor, "whether there is substantial evidence supporting the appellant's view is not the question" on appeal. *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order). Moreover, to the extent that the ALJ's RFC analysis failed to make express findings with respect to Plaintiff's medically determinable impairments, such lack of explanation does not constitute legal error where, as here, the ALJ clearly considered much of the evidence that Plaintiff argues she ignored. *See id.* For these reasons, the Court finds that substantial evidence supports the ALJ's findings in her RFC analysis and that she applied the appropriate legal standards. *See Richardson*, 402 U.S. at 401.

**D. ALJ's treatment of medical source opinions**

During the disability analysis, the ALJ "will always consider the medical opinions" in the record together with other relevant evidence. 20 C.F.R. § 404.1527(b). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments" about a claimant's impairments and their effects. 20 C.F.R. § 404.1527(a)(2). Acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *See* 20 C.F.R. § 404.1513(a).

Generally, the ALJ will consider the following factors in deciding what weight to afford the opinion of an acceptable medical source: whether the source examined the claimant; how well the source explains his or her opinion with relevant evidence; how consistent the opinion is with the record as a whole; whether the source is a specialist in the area of his or her opinion; and other factors tending to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c)(1)-(6). Additionally, the Commissioner's regulations instruct that,

> [g]enerally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).

However, treating physician opinions are "'not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . .'" *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (summary order) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curium)). An ALJ may also properly afford less

than controlling weight to a treating physician's medical source statement where the "medical source statement conflict[s] with his own treatment notes[.]" *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (summary order).

When affording a treating physician's opinion less than controlling weight, the ALJ "'will always give good reasons'" for doing so. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also* 20 C.F.R. § 416.927(c)(2). To that end,

> "[t]he factors that must be considered when the treating physician's opinion is not given controlling weight include: '(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist.'"

*Brickhouse v. Astrue*, 331 F. App'x 875, 877 (2d Cir. 2009) (summary order) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)); *see also* 20 C.F.R. § 416.927(c)(1)-(6).

In this case, Plaintiff argues that the ALJ erred in failing to give Dr. Gooldy's opinion controlling weight. *See* Dkt. No. 15 at 22-23. In her decision, the ALJ discounted Dr. Gooldy's opinion because Dr. Gooldy's treating notes did not adequately support the conclusions she gave in her questionnaire with respect to Plaintiff's ability to sit, stand, and walk. *See* AR at 25. Furthermore, the ALJ found that Dr. Gooldy's opinion was inconsistent with the remainder of the medical evidence. *See id.* (citing Social Security Ruling 96-2p). Specifically, the ALJ found that Plaintiff's "testimony and the activities of daily living reported to examining sources and treating sources support a higher level of functioning." *See id.*

With respect to Dr. Hansen's psychological consultative examination, the ALJ provided sufficient reason to discount part of that opinion. For example, the ALJ disregarded some of the "marked" restrictions due to Plaintiff's testimony that indicated she socialized outside of the house with family and with a friend rather frequently, attended her children's school events, and

was struck by a car while she was outside of the house. *See id.* Thus, there was no error in the ALJ rejecting Dr. Hansen's analyses as far as they conflicted with Plaintiff's own testimony. *See Wright v. Barnhart*, 473 F. Supp. 2d 488, 493 (S.D.N.Y. 2007). For these reasons, the Court finds that substantial evidence supports the weight that the ALJ afforded to Dr. Gooldy's and Dr. Hansen's opinions. *See Richardson*, 402 U.S. at 401.

## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No 15, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 21, is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: February 10, 2017
Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge